IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NETQUETTA SHEPPARD,<br><br>　　　**Plaintiff,**<br><br>　　　v.<br><br>AMAZON.COM SERVICES, LLC,<br><br>　　　**Defendant.** | Case No. 2:23-CV-02216-JAR-RES |

### MEMORANDUM AND ORDER

Plaintiff Netquetta Sheppard brings this lawsuit against her former employer, Defendant Amazon.com Services LLC, alleging claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act ("Title VII"), and interference with and retaliation in violation of the Family Medical Leave Act ("FMLA"). This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint in Part (Doc. 20). The motion is fully briefed, and the Court is prepared to rule. For the reasons set forth below, the Court grants in part and denies in part Defendant's motion to dismiss.

**I.     Legal Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[1] and must include "enough facts to state a claim for relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

[2] *Id.* at 570.

reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[7] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[8] *Id*. at 678–79.

[9] *Id*. at 679.

[10] *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

**II.     Background**

The following facts are alleged in Plaintiff's First Amended Complaint.[11] For the purposes of deciding this motion, the Court assumes these facts to be true.

Plaintiff was hired as an outbound dock associate at Defendant's warehouse in Kansas City, Kansas in 2017. Plaintiff was promoted in 2019 to a "problem solver," where she was responsible for resolving shipping issues that arose at that warehouse. In the fall of 2020, Defendant hired Roger Lutcher as a manager in charge of various departments around Plaintiff's workplace area. Lutcher also directly managed Plaintiff on occasion.

Shortly after he was hired, Lutcher began behaving inappropriately toward Plaintiff and other female employees. For example, Lutcher would make sexual comments about Plaintiff's body, such as: "girl you got a fat ass" and "I can tell you've been working out" while staring at her inappropriately. Lutcher then found Plaintiff's profile on Facebook and began sending her inappropriate messages, including an unsolicited photograph of his erect penis. In response, Plaintiff deleted the photograph and blocked Lutcher from her Facebook account. Plaintiff approached Lutcher at work the next day and told him to stop treating her inappropriately and warned that if he did not stop, she would report him to the police.

In October 2020, Carry Pressly, one of Defendant's Human Services Representatives, asked Plaintiff if any manager had behaved inappropriately towards her. Plaintiff immediately told Pressly about the photograph Lutcher sent her and the comments he routinely made about

---

[11] Doc. 16.

her.  Plaintiff wrote a statement regarding Lutcher's harassment for Pressly.  After submitting her written statement, no one from Human Resources followed up with Plaintiff.

About a month after Plaintiff's meeting with Pressly, Lutcher was reassigned to another department.  This reassignment appeared to Plaintiff to be routine in nature and not in an effort to prevent or remedy the sexual harassment against Plaintiff.  Lutcher was not otherwise disciplined, nor did he receive any additional anti-sexual harassment training.

In the spring of 2021, despite being reassigned, Lutcher approached Plaintiff at work and told her that he was her manager again.  Plaintiff responded that he was not, but Lutcher insisted that he was.  Lutcher did ultimately return to work in Plaintiff's workplace area.  Shortly after his return, Plaintiff observed him brush his penis against the backside of another female employee..  Plaintiff told Lutcher that she witnessed this and warned him that she would report him to Human Resources again.

While working at Defendant's warehouse, employees used an app called Chime to communicate with each other and to resolve issues.  Occasionally, the Chime app would malfunction, and the employees instead texted each other from their personal cell phone numbers.  On one occasion, Plaintiff needed to discuss a work issue with Lutcher when the Chime app was down, so Lutcher gave Plaintiff his personal cell phone number.  Weeks after resolving the work issue, Lutcher sent Plaintiff a text message stating that he wanted to "lick her clit."  Plaintiff did not respond to this message but did show it to another employee.

In November 2021, Lutcher texted Plaintiff two separate videos of his erect penis.  One of these videos was sent to Plaintiff while they were both at work.  Plaintiff showed the video to another employee.  Later that day, Lutcher approached Plaintiff and asked whether she had watched the video.  When Plaintiff responded that she had not watched it and that she was afraid

4

to do so, Lutcher responded, "You better watch that fucking video and respond," in a threatening tone.

Several days later, Lutcher was leading a department meeting when Plaintiff noticed him inappropriately staring at a new female employee. Upon witnessing this, Plaintiff reported all of Lutcher's inappropriate sexual behavior, including the videos of his erect penis, to managers Mike Legget and Taylor Quen. Legget and Quen accompanied Plaintiff to the Human Resources Department to file a formal complaint against Lutcher. Plaintiff filed her complaint and provided the phone number from which she received the videos to cross-reference with Lutcher's phone number. Plaintiff also provided the video to Human Resources Supervisor Tiffany Dantzler.

At that meeting, Dantzler asked Plaintiff if she would like to transfer to another department, which Plaintiff declined. Plaintiff had two other phone conversations with employees from the Human Resources Department. Lutcher remained Plaintiff's manager for over a month after Plaintiff filed her complaint and during that time, Lutcher behaved rudely to Plaintiff and spoke to her in an aggressive tone.

As a result of the sexual harassment, Plaintiff felt anxious, humiliated, embarrassed, degraded, and threatened. Therefore, she sought to take leave under the FMLA and short-term disability. Plaintiff had to work with Defendant's third-party administrator to facilitate the leave request, which included being required to submit a lot of additional information and documentation. Her leave was never formally approved. Additionally, in April 2022, Defendant accidentally terminated Plaintiff's employment. After being informed that it was a mistake, Plaintiff resumed her efforts to obtain leave but was unsuccessful. Defendant terminated Plaintiff's employment a second and final time in January 2023. While she was trying to obtain

5

FMLA and short-term disability leave, Plaintiff received help from a mental health professional due to the harassment and retaliation, because Plaintiff did not feel safe at work, and because prior to her termination, she felt compelled to resign. Plaintiff initiated this lawsuit against Defendant in April 2023.

**III.    Discussion**

Plaintiff's First Amended Complaint asserts three counts against Defendant: Sexual Harassment in Violation of Title VII (Count I); Retaliation in Violation of Title VII (Count II); and Interference and/or Retaliation in Violation of the FMLA (Count III). Defendant moves to dismiss Count I in part because the allegations of conduct occurring in 2020 are untimely and because the First Amended Complaint does not contain sufficient factual allegations to support constructive discharge; Count II in its entirety for failure to exhaust administrative remedies and failure to state a claim of constructive discharge; and Count III in its entirety because the sole basis for Plaintiff's claim—that she was required to provide documentation to support her need for leave—is permitted under the FMLA and she was ultimately given leave in excess of what the FMLA requires. The Court addresses each in turn.

**A.    Plaintiff's Allegations of Sexually Harassing Conduct in 2020 in Count I**

"Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct."[12] "The exhaustion requirement is not jurisdictional, but is an affirmative defense that the court must enforce if the employer raises it."[13] Here, Defendant raised the affirmative defense, contending that the allegations in Count I of Plaintiff's First Amended Complaint

---

[12] *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(i)).

[13] *Cummings v. United States Postal Serv.*, No. 20-7066, 2021 WL 4592271, at *4 (10th Cir. Oct. 6, 2021) (citing *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020)).

regarding incidents of sexual harassment occurring before October 2020 are time-barred because they occurred more than 300 days before Plaintiff filed her charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC") on March 17, 2022 and May 26, 2023.  Plaintiff concedes that some of the alleged acts of harassment occurred outside the time limit imposed by Title VII, but also alleges several incidents which clearly occurred within the 300-day time frame.  Therefore, Plaintiff asserts that these timely incidents, when viewed together with the incidents that occurred outside of the time limitations, represent a continuing pattern of discrimination.

"Under the continuing violation doctrine, a plaintiff may recover for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a 'continuing pattern of discrimination.'"[14]  This doctrine was first recognized by the Supreme Court in *National Railroad Passenger Corp. v. Morgan* within the context of a hostile work environment claim based in Title VII.[15]  There, the Supreme Court held a continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire.[16]  The Supreme Court reasoned that because these types of "discrete acts are easily identifiable and individually actionable," such acts occurring "outside of the limitations period, even though related to those occurring within the period, are not actionable."[17]  In contrast, the Supreme Court found that the unlawful employment practices underlying a hostile work environment claim "cannot be said to

---

[14] *Zinke v. Slater*, 34 F. App'x. 667, 671 (10th Cir. 2002) (quoting *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1415 (10th Cir. 1993)).

[15] *AMTRAK v. Morgan*, 536 U.S. 101 (2002).

[16] *Id.* at 114.

[17] *Croy v. Cobe Labs, Inc.*, 345 F.3d 1199, 1202 (10th Cir. 2002) (citing *Morgan*, 536 U.S. at 114).

7

occur on any particular day."[18]  Instead, the acts "occur[] over a series of days or perhaps years," and "a single act of harassment may not be actionable on its own."[19]

Thus, the question the Court must answer is whether the allegations upon which Count I is based constitute discrete acts of discrimination, or whether they are part of a hostile work environment claim.  "Sexual harassment claims under Title VII often present in one of two forms: quid pro quo or hostile work environment."[20]  Claims of quid pro quo sexual harassment often involve an "explicit alteration in the terms and conditions of employment."[21]  Claims of hostile work environment, on the other hand, "involve severe or pervasive conduct that alters the conditions of plaintiff's employment and creates an abusive working environment."[22]  While Plaintiff does not allege hostile work environment as an independent cause of action, Count I of the First Amended Complaint does allege that the sexual harassment "was sufficiently severe and/or pervasive as to create an abusive working environment."[23]  Therefore, the Court construes Plaintiff's Title VII sexual harassment claim as a hostile work environment claim.

Defendant argues that the allegations from before October 2020 cannot be a part of a timely hostile work environment claim because Defendant transferred Lutcher in between the allegations, constituting an "intervening act."  In *Morgan*, the Supreme Court explained that in order for the pre-filing period claims to remain part of the same hostile environment claim, there must be some relationship between the pre-filing period claims and the post-filing period claims:

---

[18] *Morgan*, 536 U.S. at 115.

[19] *Id.*

[20] *McQueen v. Northrop Grumman Sys. Corp.*, No. 19-2743-KHV, 2021 WL 3164855, at *7 (D. Kan. July 27, 2021) (citing *Kelp v. B&B Lumber Co.*, No. 18-1103-JWB, 2018 WL 3831525, at *2 (D. Kan. Aug. 13, 2018)).

[21] *Exby-Stolley v. Bd. of Cty. Comm'rs*, 979 F.3d 784, 838 (10th Cir. 2020) (McHugh, J., dissenting) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998)).

[22] *McQueen*, 2021 WL 3164855, at *7 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

[23] Doc. 16 ¶ 55.

> [I]f an act on day 401 had no relation to the acts between days 1-100, or for some other reason, *such as certain intervening action by the employer*, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.[24]

Based on *Morgan*, Defendant asserts that its intervening action of transferring Lutcher precludes Plaintiff from asserting a claim for conduct before the date of this transfer. The Court disagrees.

Plaintiff alleges that Lutcher's reassignment to another department was routine in nature and was not done in an effort to prevent or remedy his sexual harassment of Plaintiff.[25] And even if Plaintiff alleged that Defendant reassigned Lutcher as a remedial action, the Court would still be wary of finding that it was a sufficient intervening action because it did not effectively terminate Lutcher's harassment of Plaintiff or otherwise remedy the situation.[26] Indeed, Lutcher's sexual harassment was not tied to his role as her manager—he tracked her down on Facebook to harass her, and harassed her via her personal cell phone number. If anything, his transfer contributed to the severity of his conduct because even after she reported it, he was not disciplined. Moreover, even after being reassigned to another department, Lutcher physically returned to Plaintiff's department to harass her, and then he was ultimately allowed to return to work in her department and harass her further. For these reasons, the Court finds that Lutcher's reassignment was not the type of intervening action by Defendant that would sever the acts

---

[24] *Morgan*, 536 U.S. at 118 (emphasis added).

[25] *See, e.g., Hansen v. SkyWest Airlines*, 844 F.3d 914, 924 (10th Cir. 2016) (citing *Vickers v. Powell*, 493 F.3d 186, 199 (D.C. Cir. 2007)) (finding no intervening act when harasser was temporarily transferred but not as a remedy).

[26] *See, e.g., Meis v. Myron's Dental Labs, Inc.*, No. 04-2201-KHV, 2005 WL 1683973, at *12 (D. Kan. July 14, 2005) (finding that employer's discipline of harasser was not sufficient to constitute an intervening action where "the written warning . . . did not effectively terminate his harassment of plaintiff"); *see also Moody v. Okla. Dep't of Corr.*, 879 F. Supp. 2d 1275, 1285 (N.D. Okla. 2012) (finding that even "so drastic a step as the termination" of the harasser "cannot be said to have intervened, as it apparently did nothing to deter the rampant, similar conduct of other officers.").

alleged before October 2020 from Plaintiff's hostile work environment claims after October 2020. The Court denies Defendant's motion to dismiss on these grounds.

### B. Plaintiff's Constructive Discharge Claims Alleged in Counts I and II

Next, Defendant moves to dismiss Plaintiff's constructive discharge claim, which is alleged as part of both Counts I and II of the First Amended Complaint, on the basis that Plaintiff failed to exhaust a constructive discharge claim and that Plaintiff fails to allege facts supporting a constructive discharge claim. The Court addresses each in turn.

#### 1. Whether Plaintiff Exhausted a Constructive Discharge Claim

Defendant argues that Plaintiff's constructive discharge claims should be dismissed because she failed to include any such allegations in her first or second charge of discrimination. Plaintiff appears to concede that neither of her charges of discrimination explicitly allege constructive discharge. However, Plaintiff asserts that she did include allegations regarding her termination because she stated she was terminated for abandoning her job, a scenario created by Defendant in refusing to grant her requests for leave. The Court disagrees.

The Tenth Circuit has concluded that constructive discharge is a "discrete and identifiable act" that must be exhausted.[27] Therefore, Plaintiff "can't dodge the exhaustion requirement simply by arguing that her constructive discharge claim stems from" her other allegations regarding her termination.[28] Because neither of Plaintiff's charges of discrimination state a distinct claim for constructive discharge, Plaintiff has not administratively exhausted such a claim. Thus, the Court grants Defendant's motion to dismiss Plaintiff's claims for constructive discharge found in Counts I and II.

---

[27] *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009).

[28] *McCray v. McDonough*, No. 22-2154-DDC-ADM, 2023 WL 171927, at *5 (D. Kan. Jan. 12, 2023) (alterations in original).

### 2. Whether Plaintiff has Alleged Facts Sufficient to Support a Constructive Discharge Claim

Even if Plaintiff had administratively exhausted her constructive discharge claim, it would nonetheless fail on the merits. "'A claim of constructive discharge . . . has two basic elements[:] [F]irst that [the plaintiff] was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign . . . . [Second,] that he actually resigned.'"[29] Here, while it may be true that Plaintiff was discriminated against to the point where a reasonable person in her position would have felt compelled to resign, Plaintiff did not ultimately resign. Rather, she alleges that her employment was terminated before she could resign. "For that reason she has no claim for relief under a constructive-discharge theory."[30]

### C. Plaintiff's Claim of Retaliation in Violation of Title VII in Count II

Next, Defendant asserts that Plaintiff fails to state a claim for retaliation under Title VII. In *Khalik v. United Air Lines*,[31] the Tenth Circuit provided an extensive analysis of the pleading standard for employment discrimination and retaliation claims under *Iqbal* and *Twombly*.[32] The court was careful to note that the plaintiff is not required to "set forth a prima facie case for each element" to successfully plead a claim of discrimination.[33] Instead, she is only required to "set forth plausible claims."[34] Nevertheless, "the elements of each alleged cause of action help to

---

[29] *Rivero v. Bd. of Regents*, 950 F.3d 754, 761 (10th Cir. 2020) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).

[30] *Pennington v. Horizon/CMS Healthcare Corp.*, No. 98-0213, 1998 WL 36030326, at *1 (D.N.M. Sept. 4, 1998) (first citing *Miller v. Tex. State Bd. of Barber Exam'rs*, 615 F.2d 650, 652 (5th Cir. 1980); and then citing *Ross v. Double Diamond, Inc.*, 672 F. Supp. 261, 278 (N.D. Tex. 1987)); *see also Mackenzie v. Potter*, 219 F. App'x 500, 503 (7th Cir. 2007) ("However, Mackenzie did not show that she was *constructively* discharged because she was *actually* fired for failing to follow instructions.").

[31] 671 F.3d 1188 (10th Cir. 2012).

[32] *Id.* at 1193–94.

[33] *Id.* at 1193.

[34] *Id.*

11

determine whether [the plaintiff] has set forth a plausible claim."[35]  Moreover, the Tenth Circuit "provided a list of facts an employment discrimination plaintiff could reasonably be expected to know and allege to satisfy the plausibility requirement of *Twombly*."[36]  Such facts could include the inconsistencies given for the adverse employment decision, when the complaint at issue was filed, the context of the employment decision, or any other reasons the plaintiff believes discrimination or retaliation formed the basis of the decision.[37]  Therefore, the Court considers both the elements of a prima facie case of retaliation under Title VII, as well as the list of facts provided by the *Khalik* court, to help determine whether Plaintiff sets forth plausible claims in this case.

The elements of a prima facie case of retaliation under Title VII are: "(1) that Plaintiff engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[38]  As to the first element, there is no dispute that Plaintiff engaged in protected opposition to discrimination when she complained of and opposed Lutcher's sexual harassment.  Plaintiff alleges with specificity that she orally complained of Lutcher's sexual harassment to a Human Resources representative in October 2020 and also submitted a written statement.  As to the second element, Plaintiff alleges that the materially adverse action she faced was both her constructive discharge and her ultimate termination.  For the reasons set forth above, the Court rejects the notion that Plaintiff was constructively discharged and, therefore, finds that this could not be a materially adverse action.

---

[35] *Id.* at 1192.

[36] *Id.*

[37] *Id.*

[38] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233–34 (10th Cir. 2015) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

However, "[t]ermination of employment is 'clearly an adverse employment action.'"[39] Therefore, the Court proceeds to the third element and considers whether Plaintiff has sufficiently alleged that a causal connection existed between her protected activity—complaining of and opposing Lutcher's sexual harassment—and the materially adverse action of her termination.

A plaintiff can meet the causal connection element of the prima facie case by "producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'"[40] The Tenth Circuit has cautioned that "the phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the [protected action] and only culminates later in actual discharge."[41] Plaintiff formally complained to Human Resources about Lutcher's sexual harassment first in October 2020 and again in November 2021. She was terminated fourteen months after the latest complaint in January 2023. In the Tenth Circuit, fourteen months is too large of a gap to establish a causal connection.[42]

However, drawing all reasonable inferences in the First Amended Complaint in favor of Plaintiff, as this Court is bound to do at this stage of the proceedings, Plaintiff plausibly alleges a pattern of retaliatory conduct that began soon after her protected activity, ultimately culminating in her termination. Indeed, Plaintiff alleges that soon after making a formal complaint about

---

[39] *McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 716 (10th Cir. 2011) (citing *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008)).

[40] *Adams v. Washburn Univ. of Topeka*, 66 F. App'x 819, 821–22 (10th Cir. 2003) (citing *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)).

[41] *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007) (alteration in original) (quoting *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996)).

[42] *See, e.g., Id.*, 480 F.3d at 1198 (noting that the Tenth Circuit has found a proximity of three months insufficient to support a "presumption of causation"); *see also Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (noting that four months was too large of a time gap to establish a causal connection).

13

Lutcher's behavior, a "string of events" occurred that led her to believe she was being retaliated against: her accidental termination, her leave of absence being denied, and her continued harassment by Lutcher.[43]  "From these allegations, one could infer that this pattern of conduct following [Plaintiff's] grievance . . . was retaliatory and a precursor to her ultimate termination . . . thus providing the necessary plausible causal connection at this stage."[44]  Accordingly, the Court concludes that Plaintiff has plausibly stated a retaliation claim under Title VII, and denies Defendant's motion to dismiss on this claim.

> D. **Plaintiff's Claim of Interference and/or Retaliation in Violation of the FMLA in Count III**

Finally, Defendant moves to dismiss Count III of Plaintiff's First Amended Complaint on the basis that Plaintiff has failed to state a claim for FMLA interference and retaliation.  As for her interference claim, Plaintiff argues that Defendant interfered with her rights under the FMLA by sabotaging her leave process and ultimately denying her request to take leave.  As for her retaliation claim, Plaintiff argues that Defendant terminated her in retaliation for seeking leave under the FMLA.  The Court addresses each argument in turn.

> 1. **FMLA Interference**

To bring a successful FMLA interference claim, Plaintiff "must show that (1) [s]he was entitled to FMLA leave, (2) an adverse action by h[er] employer interfered with h[er] right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights."[45]  However, just as with Title VII retaliation claims, Plaintiff "is

---

[43] Doc. 27 at 12.

[44] *Greene v. Okla. State Dep't of Health*, No. CIV-20-01122-JD, 2022 WL 545047, at *6 (W.D. Okla. Feb. 22, 2022) (first citing *Marx*, 76 F.3d at 329; and then citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

[45] *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1180 (10th Cir. 2006)).

14

not required to 'set forth a prima facie case for each element' to successfully plead her claim . . . she is only required to 'set forth plausible claims.'"[46] Here, there does not appear to be a dispute that Plaintiff was entitled to FMLA leave, thereby satisfying the first prong. The parties do dispute the second and third prongs, however.

Plaintiff bases her interference claim on the fact that (1) Defendant's third party administrator interfered with her right to take FMLA leave by repeatedly requiring Plaintiff to submit additional information and documentation to facilitate her leave request, and (2) Defendant ultimately failed to approve her leave request. In response, Defendant asserts that seeking documentation from Plaintiff regarding her FMLA request cannot constitute an adverse action because it was entirely lawful for Defendant to make such requests. Moreover, Defendant claims that Plaintiff's FMLA request was ultimately granted, as evidenced by the fact that she admitted in her charge of discrimination to being on leave.

An employee's right to FMLA leave is subject to the certification requirements of 29 U.S.C. § 2613. "Kansas district courts have held that if an employer requires certification, '[f]ailure to meet the certification requirements renders the employee's absence unprotected by the FMLA.'"[47] An employer may even "require a second opinion concerning information included in a certification."[48] "If an employee violates attendance policies of the company due to the uncertified FMLA forms, the employer may terminate the employee without violating the FMLA."[49] Here, Plaintiff's only allegation for interference with her right to take FMLA leave is that Defendant's third-party administrator "constantly required [her] to submit additional

---

[46] *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012).

[47] *Robinson v. Farmers Servs. L.L.C.*, No. 10-cv-02244-JTM, 2010 WL 4067180, at *3 (D. Kan. Oct. 15, 2010) (quoting *Myers v. Dolgencorp, Inc.*, No. 04-4137-JAR, 2006 WL 408242, at *6 (D. Kan. Feb. 15, 2006)).

[48] *Smith v. Millennium Rail, Inc.*, 241 F. Supp. 3d 1183, 1195 (D. Kan. 2017) (citing 29 U.S.C. § 2613(c)).

[49] *Robinson*, 2010 WL 4067180, at *3 (citing *Myers*, 2006 WL 4082423, at *6).

information and documentation."[50]  She does not allege that Defendant or its third-party administrator asked her for anything beyond what they are legally entitled to request from her under the FMLA.  Thus, the Court fails to see how such requests could constitute an adverse action.

There is substantial debate between the parties regarding whether Plaintiff's request for leave under the FMLA was ultimately approved or denied.  However, in viewing the allegations in the First Amended Complaint in the light most favorable to Plaintiff, the Court concludes at this stage of the proceedings that Plaintiff's FMLA request was never approved.  The Court must consider, then, whether such a lack of approval constituted an interference with Plaintiff's rights under the FMLA.  Notwithstanding the fact that Plaintiff's FMLA leave request was never formally approved, it is undisputed that Plaintiff *did* take time off of work to receive "help from a mental health professional due to the harassment and retaliation,"[51] and that Plaintiff suffered no loss of pay or benefits during that time.  However, despite the fact that Plaintiff was ostensibly obtaining the benefits of being on FMLA leave, Plaintiff's rights under the FMLA were still interfered with by the lack of formal approval.  Indeed, as set forth above, without formal approval, her time off was not protected by the FMLA and, therefore, Defendant was allowed to treat her absences as violations of its attendance policy, and could terminate her for such absences without violating the FMLA.  The Court is satisfied that this is sufficient to state a claim of FMLA interference.  Therefore, Defendant's motion to dismiss is denied on this claim.

---

[50] Doc. 16 ¶ 43.

[51] Doc. 16 ¶ 46.

### 2.     FMLA Retaliation

The pleading standard for an FMLA retaliation claim is the same as a Title VII retaliation claim.  As with Plaintiff's Title VII retaliation claim, it appears undisputed that Plaintiff engaged in protected activity when she sought to take FMLA leave, and it is clear that her termination was an adverse action.  Therefore, again only the third prong is at issue: whether a causal connection exists between the protected activity and the adverse action.  To establish a causal connection for an FMLA retaliation claim:

> [A] plaintiff must [allege] circumstances that justify an inference of retaliatory motive.  If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection.[52]  Temporal proximity between an exercise of FMLA rights and a termination of employment is sufficient to establish a causal connection 'if the termination is very closely connected in time to the protected activity.'[53]

In viewing the allegations in the First Amended Complaint in the light most favorable to Plaintiff, the Court concludes that she has sufficiently alleged temporal proximity between her requests to take FMLA leave and her termination, such that the Court can infer a retaliatory motive.  Indeed, the First Amended Complaint alleges that Plaintiff was out on leave (whether formally approved as FMLA leave or not), and continuously attempting to convert the leave she was on to FMLA leave, at the time she was terminated in January 2023.  Therefore, the Court finds that Plaintiff has pleaded sufficient facts to state a plausible FMLA retaliation claim.  Defendant's motion to dismiss on this claim is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint in Part (Doc. 20) is **granted in part** and **denied in**

---

[52] *Fouts v. Air Wis. Airlines, LLC*, No. CIV-22-120-D, 2022 WL 2533386, at *3 (W.D. Okla. July 7, 2022) (alteration in original) (citing *Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019)).

[53] *Id*. (quoting *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006)).

**part**.  The Court grants Defendant's motion to dismiss Plaintiff's claims of constructive discharge.  The Court denies the remainder of Defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 29, 2023

S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE